UNITED STATES DISTRICT COURT      SEND
CENTRAL DISTRICT OF CALIFORNIA     ENTER
                                                          JS-6

**CIVIL MINUTES - GENERAL**

Case No.: CV 01-00515 PA (SHx)                   Date: January 24, 2005

Title: Juan Flores, et al. v. Albertson's, Inc. et al.

**DOCKET ENTRY**

**PRESENT:**

HONORABLE PERCY ANDERSON, UNITED STATES DISTRICT JUDGE

C. Kevin Reddick                        Jennifer Cheshire
Deputy Clerk                             Court Reporter

**Attorneys Present for Plaintiff:**        **Attorneys Present for Defendants:**
Barbara Hadsell                       Remy Kessler
Della Bahan                          Lawrence Gartner
Robert Newman                       Michelle Wlaker
Marvin Krakow                        Wendy Stanford
Theresa Traber




PROCEEDINGS:    MOTIONS FOR FINAL APPROVAL OF CLASS ACTION
                           SETTLEMENTS (DOCKET NOS. 623, 625, 627, AND 629), A
                           MOTION FOR ATTORNEYS' FEES (DOCKET NO. 632), AND A
                           MOTION FOR AWARD OF LITIGATION EXPENSES AND COSTS
                           (DOCKET NO. 651)

       Before the Court are Motions for Final Approval of Class Action Settlements (Docket Nos. 623, 625, 627, and 629), a Motion for Attorneys' Fees (Docket No. 632), and a Motion for Award of Litigation Expenses and Costs (Docket No. 651).

       Throughout the 1990s, Ralphs Grocery Company ("Ralphs"), Albertson's, Inc. ("Albertsons"), and The Vons Companies, Inc. and Safeway, Inc. ("Vons & Safeway") (collectively the "Supermarket Defendants") outsourced their janitorial services to several contractors. These outside companies included defendant Building One Service Solutions, Inc. (collectively "Building One"). Building One is a subsidiary of Encompass Services Corp. ("Encompass"). Plaintiffs Juan Flores et al. are a class of workers who provided janitorial services to the Supermarket Defendants throughout California, and were employed by various janitorial subcontractors retained by Building One. Plaintiffs claim to have regularly worked in excess of 40 hours per week, but were never paid overtime. Plaintiffs originally filed suit in state court on December 29, 2000. The state court action



was removed and plaintiffs filed a second lawsuit in this Court. The action originally filed in federal court became the lead case and the state court complaint was eventually dismissed.

This case proceeded with causes of action for: (1) violations of the Fair Labor Standards Act; (2) violations of the California Labor Code and Industrial Wage Commission Orders; (3) breach of written contract; (4) negligence per se; (5) negligent training and/or supervision; (6) negligent hiring and retention; (7) fraud; (8) violations of California Business and Professions Code section 17200; and (9) additional violations of California's unfair competition laws. In May 2001, the Court certified the class as to liability and injunctive relief but denied certification as to damages. After nearly two years of litigation, Encompass and Building One filed for bankruptcy in November 2002. The litigation involving the Supermarket Defendants continued during the bankruptcy proceedings.

Following extensive discovery and motion practice, the plaintiffs entered into a series of settlements with defendants. Building One and Encompass settled with plaintiffs for $900,000. That settlement was subsequently approved by the bankruptcy court. Ralphs settled for $3,049,000, Albertsons settled for $4.5 million, and Vons and Safeway settled for $14 million. Combined, the settlements have a value of $22,449,000. The settlement agreements with the Supermarket Defendants leave the amount of an attorneys' fee award in the Court's discretion but indicate the amount of attorneys' fees and costs the plaintiffs' attorneys would seek from the settlement funds. Specifically, the settlement agreements with the Supermarket Defendants contain provisions that plaintiffs' attorneys would seek $750,000 in fees and $100,000 in costs from the Ralphs settlement, $1,125,000 in fees and $250,000 in costs from the Albertson's settlement, and $4 million in fees and $575,000 in costs from the Vons and Safeway settlement. The settlement agreement with Building One and Encompass provided that plaintiffs' attorneys could seek an award of attorneys' fees from this Court but did not set any specific amount for plaintiffs' attorneys' fees. Plaintiffs' attorneys seek $225,000 in fees and $75,000 in costs from the Building One and Encompass settlement. Plaintiffs' attorneys request a total of $6.1 million in fees plus costs of $813,774.59.[1/]

The Court preliminary approved the settlement agreements in August. The class was then notified of the settlements and their terms. No member of the class has objected to the settlements. Defendants, not surprisingly, do not oppose the Motions for Final Approval of Class Action Settlements or the amounts requested in the Motion for Attorneys' Fees and Motion for Litigation

---

[1/]   In light of the limited funds generated by the Building One and Encompass bankruptcy and resulting settlement and the fact that the amounts set aside in the Supermarket Defendants' settlements exceed the amount of costs plaintiffs' counsel claims to have incurred, plaintiffs' counsel request in a supplemental filing that none of the costs be charged against the Building One and Encompass settlement. Instead, plaintiffs' counsel requests that they recover $505,842.29 in costs from the Vons and Safeway settlement (62.16% of the total requested costs), $87,969.03 in costs from the Ralphs settlement (10.81% of total requested costs), and $219,963.27 in costs from the Albertson's settlement (27.03% of total requested costs).

Page 3                    **CIVIL MINUTES - GENERAL**                    January 24, 2005

Expenses and Costs.[2] Although the Court has received no opposition to the amount of the fees and expenses requested, the Court is nevertheless obligated to conduct a careful review of the reasonableness of the requested attorneys' fees and costs. See In re Washington Public Power Supply System Sec. Litig., 19 F.3d 1291, 1302 (9th Cir. 1994) ("Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs.").

   I.    Fairness of Class Action Settlements

Federal Rule of Civil Procedure 23(e) requires the district court to determine whether a proposed class action settlement is fundamentally fair, adequate, and reasonable. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Id. "Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." Id. Settlement approval that takes place prior to formal class certification requires "a higher standard of fairness." In re Mego Financial Corp. Securities Litigation, 213 F.3d 454, 458 (9th Cir. 2000).[3]

   A.    Strength of Plaintiffs' Case

There is little doubt that Building One and Encompass failed to provide plaintiffs with the overtime pay to which they were entitled. Plaintiffs faced some difficulty, however, in establishing that the Supermarket Defendants acted as joint employers. Without a finding that the Supermarket Defendants were joint employers, plaintiffs could not recover against the Supermarket Defendants. Although the Court denied the Supermarket Defendants motions for summary judgment on the joint employer issue, plaintiffs faced a significant evidentiary burden to establish that the Supermarket

---

[2]    Ralphs does, however, oppose plaintiffs' counsel's request that the residual amounts available for paying costs under the settlements be paid out as part of the cy pres distributions. Plaintiffs dispute Ralphs' interpretation of the settlement agreements. Assuming plaintiffs' interpretation is correct, there is no need to specify that the residual amounts available for paying costs under the settlements be paid out as part of the cy pres distributions. Because this Motion only requires the Court to determine if the settlement agreements should be approved, the Court declines to interpret the settlement agreements unless a dispute arises as to the disbursement of the settlement funds.

[3]    Because the class in this case was certified as to liability but not as to damages, the Court will apply the heightened standard of review.

Defendants exercised the type of control over plaintiffs to transform them from independent contractors to joint employees.

### B.    Risk, Expense, Complexity, and Likely Duration of Further Litigation

The parties resolved plaintiffs' claims shortly before trial. The trial would have been long, complex, and risky. To establish liability on the joint employer issue, the parties would have been required to elicit testimony from dozens, if not hundreds, of witnesses concerning the scope of control the Supermarket Defendants exercised over plaintiffs. The Supermarket Defendants may have exercised varying levels of control, and some stores within each chain may have exercised more or less control. Many of the witnesses, including most of the plaintiffs, would have required Spanish interpreters. Additionally, because the class was never certified as to damages, and the Court had not agreed to a statistical sampling method to apportion damages, each plaintiff may have had to testify concerning the precise amount of his or her uncompensated overtime pay. Requiring each plaintiff to provide evidence concerning damages may have lasted for months.

### C.    Risk of Maintaining Class Action Status Throughout the Trial

Differences among the Supermarket Defendants in how they exercised control over plaintiffs presented at least some risk that plaintiffs would have lost class action status at some point during trial. Moreover, the class was never certified as to damages.

### D.    Amount Offered in Settlement

Determining defendants potential liability in this case is complicated by Building One and Encompass' failure to keep adequate records of its employees' hours. The Court is comfortable, however, in finding that the settlement amounts will provide a substantial percentage of the recovery plaintiffs would have obtained had they prevailed at trial. More than 2000 individuals have submitted claims pursuant to one of the four settlements at issue here. Based on the responses in the claim forms and the amount of the settlements, a plaintiff's average recovery under the settlement agreements is expected to be approximately $4,500 for those who worked at Albertsons, $7,100 for those who worked at Vons and Safeway, and $9,300 for those who worked at Ralphs. Plaintiffs will receive an additional $1,100 or so from the Building One and Encompass settlement. The settlements therefore provide sizable recoveries for plaintiffs, all of whom worked for minimum wage as janitors, and many of whom are monolingual Spanish speakers.

### E.    Extent of Discovery Completed and the Stage of the Proceedings

Here, the case settled shortly before trial after more than three years of extensive litigation. The parties had completed discovery and a round of potentially dispositive motions. Both sides had a good understanding of the strengths and weaknesses of their cases. The settlements, which were negotiated for months with the assistance of mediators, were reached without collusion.

### F.    Experience and Views of Counsel

Plaintiffs' counsel are experienced and competent litigators. According to their declarations, plaintiffs' counsel believe that the settlements are fair and reasonable.

G.     Presence of a Governmental Participant

There was no governmental participant in this action. This factor is therefore not applicable.

H.     Reaction of the Class Members to the Proposed Settlement

No class member has objected to the settlements.

II.     Attorneys' Fees

Plaintiffs' counsel seek $6.1 million in attorneys fees pursuant to either the fee-shifting provisions of plaintiffs' federal and state fair employment claims or as a percentage of the common fund created by the settlements. See Staton v. Boeing Co., 327 F.3d 938, 967 (9th Cir. 2003) ("We conclude . . . that there is no preclusion on recovery of common fund fees where a fee-shifting statute applies."). When fees are sought pursuant to a fee-shifting statute, a court "'must calculate awards for attorneys' fees using the 'lodestar' method.'" Id. at 965 (quoting Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)). In common fund cases, "where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method." Hanlon, 150 F.3d at 1029. "The percentage method means that the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." Id. The Ninth Circuit has established 25% of the common fund "as a benchmark award for attorney fees." Id. "The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases. Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." Vizcaino v. Mircrosoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002).

Here, plaintiffs' counsel request for $6.1 million in fees amounts to 27% of the $22,449,000 settlement. Plaintiffs' counsel support the reasonableness of the requested fees by arguing that the requested fees are significantly lower than they would be under a lodestar calculation. Plaintiffs' counsel contends that a lodestar calculation, which multiplies the reasonable number of hours worked by a reasonable hourly rate, would result in a fee request of $10,132,526. Plaintiffs' lodestar calculation includes more than 32,000 hours billed by attorneys, paralegals, and law clerks from ten different law firms. Plaintiffs seek hourly rates starting at $175 an hour for law clerks, including "student" clerks, and paralegals, $250 an hour for first year associates, and $560 an hour for the most experienced attorneys.[4]

---

[4]     The Court has not thoroughly analyzed the reasonableness of the number of hours billed by plaintiffs' counsel. The Court notes, without deciding, that the hourly rates proposed by plaintiffs' counsel are, at a minimum, on the high end of rates charged for similar work in the community. If the Court were to apply the lodestar method, the Court would reduce the hourly rates proposed by

Under the percentage method, plaintiffs' counsel seek a premium above the Ninth Circuits' 25% benchmark. The Ninth Circuit has affirmed awards in excess of the 25% benchmark. See, e.g., Vizcaino, 290 F.3d 1043 (affirming attorneys' fee award of 28% of common fund). In Vizcaino, which lasted for eleven years, class counsel pursued the case in the absence of supporting precedents, twice revived the case on appeal, and obtained significant non-monetary relief. Id. at 1048-50. Although plaintiffs' counsel did face certain obstacles in this case, including the fact that many of the plaintiffs were monolingual Spanish speakers and suspicious of becoming involved in a federal court action, the Court does not find that this case presented the level of extraordinary circumstances supporting the 28% award in Vizcaino. That is not to minimize the efforts of plaintiffs' counsel—they did excellent work and this case was vigorously defended—but there were also times when the case was more actively litigated than others.

Moreover, it is a bit disingenuous to characterize the requested fee as 27% of the common fund because the four separate settlements are, in reality, four separate common funds. In three of the four settlements, plaintiffs' counsel seek fees amounting to 25% or less of the settlement amount. Specifically, plaintiffs' counsel's requested attorney fee award of $225,000 from the Building One and Encompass settlement is 25% of the $900,000 settlement, the proposed $1,125,000 in fees from the $4,500,000 Albertson's settlement equals the 25% benchmark, and the $750,000 in fees from the Ralphs' settlement is 24.6% of the $3,049,000 settlement. The request for $4 million in attorneys' fees from the $14 million Vons and Safeway settlement, however, amounts to 28.57%. By treating the four separate funds collectively, plaintiffs' counsel do not explain why the beneficiaries of the Vons and Safeway settlement should pay a premium for their attorneys' services over and above the amounts paid by those benefitting from the Ralphs, Albertson's, and Building One and Encompass settlements.

The Court finds that an award of the 25% benchmark is reasonable and fair under the circumstances presented by this case. Because plaintiffs' counsel apparently believe that 25% of the funds in the Ralphs, Albertson's, and Building One and Encompass settlements is appropriate and reasonable compensation, the Court will apply the 25% benchmark to the $14 million Vons and Safeway settlement as well. Accordingly, the Court awards $3,500,000 in attorneys' fees to plaintiffs' counsel from the Vons and Safeway settlement. The Court further confirms the attorneys' fees requests of $225,000 from the Building One and Encompass settlement, $1,125,000 from the $4,500,000 Albertson's settlement, and $750,000 from the Ralphs' settlement.

### III.    Litigation Expenses and Costs

Here, although much of the $813,774.59 in litigation expenses and costs requested by plaintiffs' counsel is reasonable, other items are either excessive or should be considered overhead expenses. "Reasonable costs and expenses incurred by an attorney who creates or preserves a

---

plaintiffs' counsel. Overall, the Court believes that the plaintiffs' counsel's lodestar calculation would result in an unreasonably high attorneys' fee award. That plaintiffs' counsel seek only 60% of their lodestar calculation indicates that they too believe the lodestar is inflated in this instance.

common fund are reimbursed proportionately by those class members who benefit by the settlement." In re Media Vision Tech. Sec. Litig., 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). Expenses which should be considered part of an attorney's overhead, and therefore included within an award of attorneys' fees, should not be characterized as a litigation expense and recovered as a cost item. Id. ("An award of out-of-pocket expenses should be limited to those expenses customarily billed to a fee-paying client."); see also Morganstein v. Esber, 768 F. Supp. 725, 726-27 (C.D. Cal. 1991) ("First, all firms have submitted as 'costs' certain items which the court believes should be absorbed as normal overhead in a percentage fee case, whatever the percentage. These include . . . 'word processing' or similar charge[s]. . . . Word processing is a sub-category of secretarial or clerical expense, nothing more, nothing less. While the court is aware that it is fashionable for many firms which bill by the hour separately to bill, or attempt to bill, a word processing charge, again, in a common fund percentage fee case, the court believes that this cost should be included in the overhead built into the percentage fee, just like any other in-house clerical expense.").

    A.    <u>Copying and Facsimile Charges</u>

Among the expenses for which plaintiffs' counsel seek reimbursement are $187,566.07 in copying costs (at $0.25 per page) and $24,023.35 in facsimile expenses (at $0.42 per page up to a maximum of $2.50 per fax). The Court is concerned by both the number of copies and faxes and the rates charged. Specifically, the number of law firms representing plaintiffs multiplied the number of copies and faxes produced. The Court therefore reduces the $211,589.42 by one-third for an approved cost of $144,066.67 for copies and faxes.

    B.    <u>Contract Labor and Secretarial Overtime</u>

Plaintiffs' counsel seek $105,057.51 for "contract labor, secretarial overtime, and similar staffing costs." These are the types of expenses that should instead be included as part of an attorney's overhead expenses. See Morganstein, 768 F. Supp. at 726-27. The Court therefore disallows this expense.

    C.    <u>Litigation-Specific Office Supplies</u>

Plaintiffs' counsel seek $2,367.99 for "litigation-specific office supplies." This expense item should be considered part of an attorney's overhead expenses. The Court therefore disallows this expense.

    D.    <u>Remaining Expenses</u>

Plaintiffs' counsel seek an additional $494,759.58 for investigators, telephone calls, class-outreach advertising expenses, deposition and witness fees, travel, mediators, document storage, computer-aided research, postage, and messengers. The Court finds that these expenses were reasonably and necessarily incurred. The Court therefore grants plaintiffs' counsel's request for these expenses plus the $144,066.76 in approved copying and facsimile costs for a total costs award of $638,826.34.

III.  Conclusion

For all of the foregoing reasons, the Court finds that the settlement agreements are fundamentally fair, adequate, and reasonable. The Court therefore grants plaintiffs' Motions for Final Approval of Class Action Settlements. The Court also grants plaintiffs' Motion for Attorneys' Fees and awards $5,600,000 in attorneys' fees to plaintiffs' counsel to be apportioned from the settlement agreements as follows: $225,000 from the Building One and Encompass settlement, $1,125,000 from the Albertson's settlement, $750,000 from the Ralphs' settlement, and $3,500,000 from the Vons and Safeway settlement. The Court allows plaintiffs' counsel to recover $638,826.34 in litigation expenses and costs and apportions that amount between the settlement agreements as follows: $397,094.45 from the Vons and Safeway settlement, $172,674.76 from the Albertson's settlement, and $69,057.13 from the Ralphs settlement.

This Order constitutes the Order and Final Judgment contemplated by the settlement agreements. The Court dismisses the action.

IT IS SO ORDERED.